# Richmond

CATHERINE ANN COLLEY v. DAVID LEONARD COLLEY.

March 4, 1963.

Record No. 5533.

Present, All the Justices.

The opinion states the case.

*Harold H. Hersch,* for the appellant.

*Harold H. Purcell* (*Arthur C. Stickley, II,* on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This is a divorce suit in which the only question now presented is whether it was properly brought in Prince William county, Virginia. The court below held that the parties last cohabited as man and wife in Louisa county, Virginia; that the defendant was a resident of the latter county and that jurisdiction was in the circuit court of that county.

The suit was brought in the Circuit Court of Prince William county June 16, 1961, by Catherine Ann Colley, complainant, against her husband, David Leonard Colley, for divorce from bed and board on the grounds of cruelty and desertion. The bill alleged that the complainant resided in Prince William county, that the defendant presently resided in Louisa County, and that the parties last cohabited in Prince William county and were the owners of real property in that county. The defendant filed an answer and cross-bill in which he admitted the allegations of the bill in these respects, but denied other allegations and prayed that a bed and board divorce be granted to him on the grounds of cruelty and desertion.

The cause was referred to a commissioner in chancery to hear the testimony and to report *inter alia* whether the court had jurisdiction. The commissioner proceeded to hear the evidence offered by the complainant and at its conclusion the defendant moved that it be struck out on the ground that it showed lack of jurisdiction. The commissioner then filed a report submitting that question to the court, along with the evidence taken before him, on consideration of which the court held as above stated and dismissed the cause.

The evidence for the complainant was to the effect that the parties were married in Arlington, Virginia, on February 9, 1956. From August, 1956, to December 21, 1960, they lived together as husband and wife in a house on a lot at Yorkshire Acres, in Prince William county, the title to which was in both of them and on which was also a trailer. In December, 1960, defendant decided that they would go to the home of his parents in Louisa county, Virginia, for the Christmas holidays and stay there until the first of the following month, when he would receive his pension check and then they would come back to Prince William county and he would get out and find work. They went down to Louisa county on December 21, 1960, and visited there with his parents. They took no furniture from their Prince William home and only the clothes they would need for the visit. They both told her mother that they were going to Louisa county just for the holidays. Sometime after they arrived in Louisa county the defendant said he was not going back; that the bill collectors could not find him there, so complainant testified, and since they could not find him they could not do anything with him; and that is where he stayed but he still did not get a job.

In January, 1961, they came back to Prince William county and took complainant's parents down to Louisa county for a christening

ceremony, after which the complainant was to return to Prince William and spend a week with her parents and then the defendant was to come back. But the next day he objected to her leaving and a quarrel ensued, following which she left and came back to Prince William without him.

In March, 1961, the defendant came back to Prince William county and brought their two children with him. He had asked the complainant to come back to him, stating that she would not have to sleep with him—only keep house and watch the children and "all four of us would be together". It was then understood that they would live in the house together but not as a 'married couple. They hoped, she said, that "by going back together we could iron things out, but it did not work out that way".

On March 27, 1961, while they were living in the home in Prince William county the defendant left and took the children with him.

The complainant testified that she had sexual relations with the defendant in Prince William county within the week prior to their going to Louisa county on December 21, 1960, and that she also had such relations with defendant in January, 1961, in Louisa county, and that was the last time they had such relations.

■ Section 20-98 of the 1950 Code provides, so far as we are here conerned, that a suit for divorce shall be brought in the county or corporation in which the parties last cohabited, or at the option of the plaintiff, in the county or corporation in which the defendant resides, if a resident of this State. The provision as to venue is mandatory and jurisdictional. *Chandler* v. *Chandler*, 132 Va. 418, 425, 112 S. E. 856, 859; *White* v. *White*, 181 Va. 162, 170, 24 S. E. 2d 448, 452.

■ The trial court held that according to our decisions in *Tarr* v. *Tarr*, 184 Va. 443, 35 S. E. 2d 401, and *Martin* v. *Commonwealth*, 195 Va. 1107, 81 S. E. 2d 574, the phrase "last cohabited" in the statute means "last copulated," and since the evidence showed that the parties last had sexual relations in Louisa county, and the defendant resided there, the Circuit Court of Prince William county was without jurisdiction.

*Tarr* v. *Tarr, supra,* dealt with § 5110 of the 1942 Code (Michie), now § 20-94 of the 1950 Code, providing that when a suit for a divorce is for adultery, it shall not be granted if the parties voluntarily cohabited after knowledge of the adultery. There the complainant contended that one act of intercourse was not voluntary cohabitation

within the meaning of that statute. We held to the contrary, stating that it was the general rule that a single voluntary act of sexual intercourse by the innocent spouse after knowledge of the offense constituted condonation. *DeBerry* v. *DeBerry*, 115 W. Va. 604, 177 S. E. 440, was cited, in which the court was of opinion that it was the intention of the West Virginia legislature that the word "cohabit" in a similar statute should mean "copulate". We concluded that "voluntary cohabitation," as used in § 20-94, "should not be restricted to its literal meaning of having dwelled together under the same roof with more or less permanency". 184 Va. at 448, 35 S. E. 2d at 404.

*Martin* v. *Commonwealth, supra,* involved the construction of a paragraph of § 18-97, which is now § 18.1-206, of the 1950 Code, as amended, relating to the crime of pandering. We held that the legislature clearly intended the word "cohabit" as used therein to mean the having of illegal sexual intercourse.

With respect however to § 20-98 of the Code prescribing the venue of divorce suits, the word "cohabit" should be given "its literal meaning of having dwelled together under the same roof with more or less permanency," as phrased in *Tarr* v. *Tarr*, 184 Va. at 448, 35 S. E. 2d at 404. That section gives the complainant the option of bringing the suit in the county or corporation where the parties last cohabited, or in the county or corporation in which the defendant resides. To hold that "last cohabited" as used in this statute means "last copulated" would result in giving jurisdiction in any county or corporation where the parties last had sexual relations, regardless of the time or purpose of their being in that place. It is not to be supposed that the legislature intended such result.

In ordinary usage and general understanding the verb "cohabit" means to live or dwell together as husband and wife, Webster's New Int. Dict., 2d ed., p. 520; Black's Law Dict., 3d ed., p. 347. "The term imports a dwelling together for some period of time, and does not include mere visits or journeys." 14 C.J.S., Cohabit, 1311.

In *Richardson* v. *Richardson,* a divorce case in the Law and Equity Court of the City of Richmond, reported in 8 Va. Law Reg., N.S., 257, referred to in *White* v. *White, supra,* 181 Va. at 166, 24 S. E. 2d at 450, the parties had lived in Louisa county for many years. Suit was brought by the wife in Richmond on the theory that when she was forced to leave home by the cruelty of her husband she came to Richmond; that while living there her husband came to see her and she there submitted to sexual relations

with him through fear. Judge Crump held that this did not give the Richmond court jurisdiction and in the course of a well-considered opinion, he said:

"Cohabitation or matrimonial cohabitation means, in the law of divorce, the permanent or public living together or dwelling together in the marital relation. * * Cohabitation, in its proper meaning in the law of divorce, has reference to a continuing condition and not to an act. * *." 8 Va. Law Reg., N.S., at 259.

In *Jennings* v. *McDougle*, 83 W. Va. 186, 190, 98 S. E. 162, 164, the court said that the phrase "in the county in which the parties last cohabited" used in the West Virginia statute, which fixed the venue of divorce actions, "necessarily means the place where the parties ceased to live together as husband and wife in the same house, and ordinarily carries with it the idea of a substantial measure of temporal continuity". See also *Hartman* v. *Hartman*, 132 W. Va. 728, 53 S. E. 2d 407.

In *Howe* v. *Howe*, 179 Va. 111, 118-9, 18 S. E. 2d 294, 297, we said that residence, or domicile, as used in the statutes dealing with divorce, contemplates the intention to live in a place permanently or certainly for an indefinite period; abiding there until the accomplishment of some purpose, without the intention to live there permanently or indefinitely, does not create a statutory residence. "To acquire a new domicile one must abide there with intention to make it his permanent home or at least his home for an indefinite period. * * In any event, the intention to make the adopted home a permanent home must appear. Time is not of the essence; intention is."

Here it appears from the testimony that the parties owned a home in Prince William county in which they lived together as husband and wife from August, 1956, to December 21, 1960. At the latter date they went to the home of defendant's parents in Louisa county to visit them during the Christmas holidays, intending to return to their home in Prince William county at the end of their visit. Neither had any thought, so far as the evidence shows, of abandoning their home in Prince William county and taking up their residence in Louisa county. Sometime after they arrived at his parents' home the defendant said he was not going back; and on January 20, 1961, when the complainant was preparing to return to Prince William with her parents, he told her she could not return and told her mother that he did not want her up there. This was far from establishing a new place of residence for the parties in Louisa county. In fact, he

came back to Prince William county in March with the purpose of continuing to live there with his wife and children.

The evidence establishes the allegation of the complainant's bill, which the defendant admitted in his answer to be true, that she and the defendant last cohabited in Prince William county.

We accordingly hold that under the terms of § 20-98 of the Code the Circuit Court of Prince William county had jurisdiction to hear and determine the matter and the decree of that court dismissing the cause must be reversed and the cause remanded to said Circuit Court for further proceedings.

The complainant shall recover her costs, including a fee of $250 to her attorney for prosecuting this appeal.

*Reversed and remanded.*