ARLENE GILBERT NETZER

V.

JULIAN REYNOLDS

Record No. 830185

June 13, 1986

Present: All the Justices

*James Ray Cottrell (Mark L. Esposito; Gannon, Cottrell & Ward, P.C.,* on brief), for appellant.
*Thomas Moncure* for appellee.

RUSSELL, J., delivered the opinion of the Court.

This appeal involves the authority of a court to correct its own final decree, *nunc pro tunc,* more than twenty-one days after its entry. More specifically, we must decide whether the court may so amend an erroneous recital in a final decree, in order to conform it to the true state of the record, where the erroneous recital appears to deprive the court of subject-matter jurisdiction.

The question arises in the context of a domestic relations dispute. Arlene Gilbert and Julian Reynolds were married in 1950. They established a marital home at 1116 Portner Road, in the

City of Alexandria, in March 1960, and lived there with their three children until some time in 1962, when the husband left the marital home and returned to his mother's home in Danville, Virginia.

During the week of Christmas, 1964, the wife went to Danville and stayed in the husband's mother's home for about a week in an effort to persuade her husband to return to the marital home. Her effort was unsuccessful, and she returned to Alexandria without him.

In December 1965, the wife filed a divorce suit in the Corporation Court (now the Circuit Court) of the City of Alexandria. Her bill of complaint alleged that "[t]he parties last residence as man and wife was in Alexandria, Virginia" and that "[t]he Complainant is an actual bona fide resident of and domiciled in the State of Virginia, City of Alexandria and has been for more than one year next preceding the filing of this Bill." The bill of complaint, however, also contained the following allegations:

4. The parties last cohabited together as man and wife in Danville, Virginia on January 2, 1965.

. . . .

8. That the Complainant and the Defendant last cohabited in Danville, Virginia on January 2, 1965 when the Complainant . . . spent Christmas at the home of the Defendant's mother in an attempt to get the Defendant to return to Alexandria, Virginia and resume his role as husband and supporter of the family. That the defendant on the date aforesaid told the wife to leave and refused to resume a marital relationship in either Alexandria or Danville.

Substituted service of process was made on the husband in Danville. In February 1966, the parties entered into a written property settlement agreement in which the husband agreed to convey to the wife sole title to the Alexandria home. The wife filed the agreement among the suit papers, but the husband entered no appearance in the divorce suit. The suit was referred to a commissioner in chancery who held a hearing in April 1966. In May 1966, the commissioner filed his report finding that the court "has jurisdiction and venue to hear and determine this cause" and recommending that the wife be awarded a divorce on the ground of desertion. The commissioner stated that the complainant had been

a bona fide resident of 1116 Portner Road, Alexandria and had been domiciled in that city for more than one year next preceding the filing of the suit. The commissioner's report further stated, however, "that the parties hereto last cohabited as husband and wife in Danville, Virginia, on January 2, 1965."

A final decree of divorce, prepared and endorsed by Martin Fogle, the wife's attorney, was presented to the court and was entered on July 19, 1966. It contained recitals similar to those in the bill of complaint and the commissioner's report, including "it appearing to the court . . . that the parties last cohabited as husband and wife in Danville, Virginia on January 2, 1965 . . . ." The decree awarded the wife a final divorce on the ground of desertion and ratified, affirmed, and incorporated the property settlement agreement. In 1968, Arlene Gilbert Reynolds married Murry H. Netzer in Montgomery County, Maryland.

In 1970, Arlene Netzer, represented by new counsel, sought a rule to show cause against Julian Reynolds for his failure to convey his interest in the Alexandria home to her pursuant to the ratified property settlement agreement. The rule was personally served on Julian Reynolds in Danville, but the court apparently took it under advisement. The record shows no further proceedings on the rule.*

In 1982, Arlene Netzer filed a motion for the appointment of a special commissioner to convey Julian Reynolds' interest in the Alexandria property to her. The judge who had entered the 1966 divorce decree was deceased in 1982. The court appointed a *guardian ad litem*, who answered that Julian Reynolds was incapacitated. Reynolds also appeared by his present counsel, who defended the motion for appointment of a special commissioner by alleging that the 1966 final decree of divorce was "invalid, void, and of no force or effect, by reason of improper venue, apparent on the face of the Bill of Complaint for Divorce and on the record."

Mrs. Netzer responded by filing a motion for the entry of an order *nunc pro tunc*, correcting the 1966 divorce decree to "conform the decree herein to the evidence taken upon the trial of this

*The record contains copies of two letters from physicians who had treated Julian Reynolds from 1963 and 1964, respectively, until 1970. The physicians opined that Reynolds was suffering from mental disorders, and that he was "incompetent to handle his own affairs" and "disabled." In 1970, Reynolds' mother, Lillian Reynolds, was appointed guardian of his person and property by the Circuit Court of Pittsylvania County.

matter." The court, in a letter opinion issued September 13, 1982, determined there was no evidence in the transcript that Julian Reynolds was a resident of Alexandria when the suit was filed; that the judge who entered the 1966 divorce decree had found on the basis of the evidence that the parties had last cohabited in Danville; that the court, even if it were to agree that the last-mentioned finding was in error, lacked the power to correct it; that no alternative basis of venue is shown by the record; and that because the final decree shows on its face that venue was improper, the decree was void for lack of jurisdiction. The court entered decrees on November 1 and November 30, 1982, overruling several post-trial motions and dismissing the suit on the grounds stated in the letter opinion. This appeal followed.

Code § 20-96 (B) provides, in pertinent part, that divorce suits shall be brought "in the county or corporation in which the parties last [cohabited], or at the option of the plaintiff, in the county or corporation in which the defendant resides, if a resident of this State." This venue provision continues to control divorce cases and was unaffected by the 1977 revisions of the general statutes relating to venue. *See* Code § 8.01-259. We have consistently held the venue statutes in divorce proceedings to be mandatory and jurisdictional. *Colley* v. *Colley*, 204 Va. 225, 227, 129 S.E.2d 630, 631 (1963); *White* v. *White*, 181 Va. 162, 170, 24 S.E.2d 448, 452 (1943); *see Chandler* v. *Chandler*, 132 Va. 418, 425, 112 S.E. 856, 859 (1922). Accordingly, the 1966 divorce decree appears on its face to be void for lack of subject-matter jurisdiction. Such decrees are subject to attack "anywhere, at any time, in any way, by anybody. It is immaterial whether the assault be direct or collateral." *Slaughter* v. *Commonwealth*, 222 Va. 787, 793, 284 S.E.2d 824, 827 (1981).

The divorce decree, however, does not accurately set forth the undisputed jurisdictional facts proved and shown by the record. In *Colley*, we construed the word "cohabit," as used in the divorce venue statute (then Code § 20-98, repealed by 1977 Acts, c. 624, replaced in pertinent part by present Code § 20-96 (B)) to mean "having dwelled together under the same roof with more or less permanency . . . . The term imports a dwelling together for some period of time, *and does not include mere visits or journeys.*" 204 Va. at 228, 129 S.E.2d at 632 (emphasis added) (citations omitted). In *Colley*, we also quoted with approval language from West Virginia authority construing the phrase "county in

which the parties last cohabited," as used in the similar divorce venue statute in that state: "[it] necessarily means the place where the parties ceased to live together as husband and wife in the same house, and ordinarily carries with it the idea of a *substantial measure of temporal continuity*." 204 Va. at 229, 129 S.E.2d at 633 (emphasis added) (quoting *Jennings* v. *McDougle*, 83 W. Va. 186, 190, 98 S.E. 162, 164 (1919)).

Applying the construction of the venue statute mandated by *Colley*, it is clear from the uncontroverted record before us that Arlene and Julian Reynolds last cohabited in Alexandria, the place of their permanent marital home, not in Danville, the place they stayed during a brief visit. Thus, the commissioner's report set forth an erroneous conclusion of law, which echoed the erroneous allegation contained in the bill of complaint. The final decree perpetuated that error. It was clearly within the power of the court, during the twenty-one day period following entry of the decree, upon proper application, to have amended it to conform to the proof and to have allowed a corresponding amendment to the bill of complaint. Rules 1:1 and 1:8. The court was not bound by the erroneous conclusion of law in the commissioner's report. *Hill* v. *Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 296 (1984). The decree would then have been unquestionably valid, adequately supported by the record and clearly within the court's jurisdiction. The question before us is whether such curative amendments may be made now.

Before 1956, Virginia adhered to the common-law rule, then shared by only six other states, which held that after the end of a term of court, the judge was powerless to change the record with respect to judicial acts performed within the ended term, with one exception: where there was sufficient *record evidence* to support the change, the court might enter a *nunc pro tunc* order to make the record "speak the truth." *Council* v. *Commonwealth*, 198 Va. 288, 291, 94 S.E.2d 245, 247 (1956). This was an inherent power of the court, independent of statute. *Id.* at 293, 94 S.E.2d at 248. In *Council*, we adopted the majority rule that the court has the inherent power, based upon any competent evidence, to amend the record at any time, when "the justice and truth of the case requires it," so as to cause its acts and proceedings to be set forth correctly. *Id.* at 292, 94 S.E.2d at 248. We continue to adhere to the rule adopted in *Council*. *Harris* v. *Commonwealth*, 222 Va. 205, 209-10, 279 S.E.2d 395, 398 (1981).

■ In our view, the case before us meets the requirements of the rule in *Council*, as well as those of the more restrictive common-law rule which preceded it, because there is ample unrefuted "record evidence" that the last place of marital cohabitation, as we have defined that term in the context of the divorce venue statute, between Arlene and Julian Reynolds, was in the City of Alexandria. Accordingly, the trial court had, at all times, and still has, the inherent power to allow an appropriate amendment to the bill of complaint, to disregard the erroneous conclusion of law contained in the commissioner's report, and to amend its final decree of divorce *nunc pro tunc*, in order to make the record "speak the truth." The court erred in determining that it lacked such power.

The orders appealed from will be reversed, and the case remanded for entry of a *nunc pro tunc* order and for further proceedings consistent with this opinion.

*Reversed and remanded.*