## CIRCUIT COURT OF THE CITY OF ROANOKE

Lois Stultz Moran

 v.

John David Moran

July 6, 1988

Case No. CH88-000028 C

By JUDGE JACK B. COULTER

The ancient, almost obsolete, special plea of condonation raises at this stage of these proceedings the issue of what constitutes cohabitation. On January 15, 1988, the plaintiff filed her bill of complaint seeking a divorce on the grounds of adultery or, in the alternative, constructive desertion based on cruelty. She alleges that marital difficulties had existed between her and her husband for a considerable period of time; that the defendant had ridiculed, humiliated and verbally abused her in an unbearable manner on numerous occasions; that during December 1987 he committed acts of adultery; and that they had not voluntarily cohabited after the fact of adultery became known to her. Whether or not they had voluntarily cohabited after the various acts of cruelty, which are unspecified and undated, but before the alleged adultery is not alleged. For the moment, however, it will be presumed that the acts of adultery in December 1987 were the final acts of cruelty that overcame any prior forgiveness thereof that could be argued had resulted from their voluntary cohabitation. The major thrust of the defendant's special plea of condonation is aimed at the charge of adultery and it will be to that allegation that this opinion will be primarily directed.

## The Facts As Agreed Upon

The facts agreed to between these litigants are limited. No record of the abbreviated hearing on February 17, 1988, has been made. The development of additional details and specifics would have been helpful, but the parties prefer to proceed on the present state of the record. In essence, it has been effectively stipulated that the parties were still living in the same marital home at the time the suit was filed on January 17, 1988, and at the time of the preliminary hearing one month later on February 17, 1988. Their common abode was a one-floor plan house with a recreation room in the basement. They had occupied separate, but adjoining, bedrooms for "two or three years before the divorce suit was filed," and hence before the alleged acts of adultery in December 1987. There were two bathrooms which they both used. The defendant spent most of his after-work hours in the recreation room, while the plaintiff spent her free time upstairs. Both parties were employed, came and went at different times, and fixed and ate their meals separately. Generally, however, the neighbors were unaware of any marital discord. The defendant paid all utility bills and all mortgage payments on their jointly-owned marital home and all other monthly recurring bills. Of over-riding significance to the plaintiff's argument was the undisputed fact that the parties had not engaged in "sexual relations" in over a year. By sexual relations it is assumed that intercourse is intended; kissing, it should be noted, could be described as a sexual relation.

## The Statute And Issue in Contest

The statute at issue is the adultery or condonation statute, § 20-94, which provides in pertinent part:

> When the suit is for divorce for adultery . . . the divorce shall not be granted if it appear that the parties *voluntarily cohabited* after the knowledge of the fact of adultery . . . [Emphasis added.]

It is the plaintiff's contention, based primarily on *Tarr v. Tarr*, 184 Va. 443 (1945), and, as she claims, re-enforced by *Colley v. Colley*, 204 Va. 225 (1963), that cohabitation requires sexual intercourse; that cohabitation and copulation are legally synonymous; that without the element of sex there can be no cohabitation. Since there was no intercourse after the adultery, ergo, the plaintiff argues, there was no cohabitation and hence the adultery has not been forgiven or condoned and such grounds, therefore, may be pursued. Because the *Tarr* decision is the anchor of the plaintiff's argument, a detailed analysis of it is appended to this opinion. The *Colley* case, which addresses the question of proper venue, holds that the place of last cohabitation should control the situs of the litigation, not where the parties may have last had intercourse.

The defendant urges, on the other hand, that cohabitation means living together as viewed by the public; a holding out to the world, as it were, of wedded union. Marital appearance, in other words, is a factor worthy of major consideration. Living under the same roof, the defendant contends, regardless of discord that may exist under it, is almost ipso facto legal cohabitation. By analogy he suggests that living "separate and apart," an essential ingredient to the finalization of any divorce, including one based on no fault, cannot exist under the same roof, absent perhaps an absolute physical barrier that might be possible under duplex-style, apartment-type dwellings.

### The Issue Analyzed And Resolved

The definition of cohabitation, then, is essential to the resolution of the issue at hand and the natural starting block for in-depth analysis. Black defines cohabitation:

> To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including *but not necessarily dependent on sexual relations*. [Emphasis added.]

Webster, on the other hand, defines cohabit simply "to live together as husband and wife."

Can a husband and wife live together without the experience of physical love-making? Can there be cohabitation without sex? The recent case of *Petachenko v. Petachenko*, 232 Va. 296 (1986), which distinguishes the *Tarr* decision, holds that:

> The "matrimonial cohabitation" consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship.

The issue in *Petachenko* was the contention, inverse to the case at bar, that a single act of intercourse was not sufficient, standing alone, to constitute a resumption of marital cohabitation when desertion was the ground of divorce claimed. To similar effect are the holdings in *Goodwyn v. Goodwyn*, 222 Va. 53 (1981); *Hoback v. Hoback*, 208 Va. 432 (1967); and others that "A mere denial of sexual intercourse, where other marital duties are performed, does not constitute desertion."

In other words, the clear holding in these decisions leads to the inescapable conclusion, even supported by logic, that there is more to cohabitation than sex. And human experience supports this view. There are many happy marriages where sexual intercourse is no longer possible. Many husbands and wives occupy separate beds; and it is not too unusual that they retreat to different rooms during their off hours.

Similar cases throughout the country have upheld the proposition that there is more to matrimony than the marital bed. In *Lillis v. Lillis*, 201 A.2d 794 (Md. 1964), for instance, a case interpreting the meaning of "separate and apart" in a divorce action based on separation, the Court noted:

> Our research indicates that virtually all the jurisdictions in this country which have voluntary separation provisions similar to ours, and which have had occasion to interpret them, have denied divorces where the parties have lived in the

same house during part or all of the critical period, *even though discontinuance of sexual relations was proved.* [Emphasis added.]

The meaning of "separate and apart," of course, was the issue, but is not "separate and apart" merely the antithesis or negative of "cohabitation"? Can a couple live "separate and apart" and still be in a state of cohabitation? Can people cohabit together while living "separate and apart"?

As to the significance of marital appearance, the Court observed in *Arnoult v. Letten*, 99 So. 218 (La. 1924), that living separate and apart:

implies the living apart . . . in such a manner that those in the neighborhood may see that the husband and wife are not living together.

The ultimate conclusion, this court noted, should not turn on what goes on, or does not, behind the closed doors of a matrimonial domicile.

In similar vein the Court in *Dudley v. Dudley*, 33 S.E.2d 489 (N.C. 1945), stated that "Marriage is not a private affair involving the contracting parties alone." And in *Wright v. Wright*, 43 N.W.2d 424 (Neb. 1950), the Court held that:

There is a rebuttable presumption that a husband and wife living in the same house live on terms of matrimonial cohabitation.

*See also Jackson v. Jackson*, 284 A.2d 654 (Md.); *Barnes v. Barnes*, 280 S.E.2d 538 (S.C. 1981); *Young v. Young*, 34 S.E.2d 154 (N.C. 1945); 24 Am. Jur. 2d, *Divorce* § 149; 14 Corpus Juris Secundum 1312, note 52; and the cases collected in 35 A.L.R.3d 1234, beginning at p. 1278.

Returning to the law in Virginia, however, the analysis by the erudite and scholarly Circuit Court Judge Robert K. Woltz of Winchester in the recent case of *Kerns v. Kerns* (Chcy. No. 87-266, May 30, 1988, Frederick County Circuit Court) is particularly persuasive:

> When married couples live together under the same roof at the marital abode, a strong presumption arises that they are living in the state of matrimonial cohabitation. This does not mean necessarily that all of the many facets and incidents of such cohabitation are present. This presumption is based upon our common social experience. When the marriage bond is forged and the parties so bound commence and continue to reside and have their domestic life under a common roof, we view them as being in a state of matrimonial cohabitation.

Matrimonial cohabitation does not require conjugal bliss. Passion may excite the marital union, but though nice is it indispensable? In the *Kerns* case Judge Woltz held that marital cohabitation still existed even though the husband and wife (1) occupied separate bedrooms on separate floors of the house; (2) individually purchased their own groceries, cooked their own meals and did their own laundry; and (3) had very little contact with each other. Whether they continued to have sex, however, or even held hands, is not revealed.

Marital cohabitation, then, includes more than any one single element. It is a bundle of duties, responsibilities, rights, and incidents. It includes "appearances" as the defendant suggests. It is more than sexual intercourse, but on the other side of the spectrum it is also more than the single incident of occupying the same shelter. Separate lives is the issue, not separate roofs. That is why a detailed recitation of specifics is so necessary in attempting to adjudicate the precise point as to when cohabitation has ceased. At what moment is the camel's back broken?

The observation of Judge Woltz is again very appealing:

> Without deciding to what degree or numerical extent the incidents of matrimonial cohabitation must wither away before that cohabitation has reached a state of legal demise, and while acknowledging that there appears to be derelictions on the part of the husband, the complainant

must sufficiently show that matrimonial cohabitation has ceased . . .

When in the case at bar did matrimonial cohabitation cease? Since the parties still lived under the same roof at the time the suit was started and for at least a month thereafter, the presumption of marital cohabitation must be indulged. It then becomes the burden of the plaintiff to overcome such presumption. The allegations, however, let alone the stipulated facts, do not meet this burden. The absence of sexual intercourse had been going on for "two to three years." But when did it cease, and why? The alleged adultery did not occur until December, 1987.

During this two-to-three-year period of sexual abstinence, for instance, did they:

(1) Go to any parties, social events, neighborhood gatherings, movies or shows, weddings or funerals, together?

(2) Have any guests or visitors within their home whom they jointly entertained?

(3) Sign any documents or papers as husband and wife (such as funeral registers, financial statements, etc.)

(4) Send out Christmas, birthday, anniversary, get-well or sympathy cards as husband and wife.

(5) Maintain memberships in any clubs, church, or associations as husband and wife.

(6) Take out the garbage, do the dishes, make the bed, clean the rooms, buy any groceries, cut the grass, wash the windows, do the laundry, shovel the snow, make any repairs, or do any household chores that enured to the benefit of the other.

(7) Pay any of the bills of or for the other.

(8) Recognize by gift, word or deed the birthday of the other or the anniversary of their union.

(9) Do anything together as the parents of their child, such as attend P.T.A. meetings, athletic, social or school events, etc.

Such itemization of "incidents" that contribute to the mutual living together of a man and woman who hold themselves out as husband and wife is almost endless. To repeat, matrimonial cohabitation requires more than merely living under the same roof; but the conjugal merger is likewise more than sexual intercourse or occupying the same bed or eating together. Marital cohabitation contains

the element of sexual intercourse; but sexual intercourse is not all there is to marital cohabitation. The greater subsumes the lesser, but not vice versa.

To continue to occupy the same marital home after several alleged acts of adultery; to partake of the hospitality, comfort, and satisfaction of enjoying the same shelter, its contents and surroundings; to accept the reputation, privileges, amenities and immunities of wedlock and apparent marital accord; to continue to receive the benefits of heat, light and water and the protection, security and safety of male companionship, or at least such presence; is enough to sustain the presumption of matrimonial cohabitation--especially in light of the requirement implicit in all divorces that the parties must live "separate and apart" before legal sanction of the severance can be awarded.

The plaintiff has also suggested that "freedom of consent," a necessary element of condonation, was lacking on her part; that she was not free to leave after learning of her husband's adultery because of the financial strain such response would have imposed. She was, however, gainfully employed and her freedom to act was not so severely hindered as to prohibit a more affirmative, clear-cut and emphatic protest. A question of priorities was created and she made her choice. She was, in fact, free to go.

For the reasons aforesaid, the defendant's special plea of condonation is sustained.

## APPENDIX

### An Analysis of Tarr v. Tarr

*Tarr v. Tarr*, 184 Va. 443 (1945), was an action by the former wife to set aside a divorce that had already been granted to the husband on the ground of adultery. The husband had instituted a suit for divorce on July 23, 1942, on the ground of adultery which the wife had not contested because, as she believed, her husband had condoned and forgiven all of the offenses alleged against her, had cohabited with her during the pendency of the suit and had led her to believe that the suit for divorce would be withdrawn. During the pendency of the suit, and as a result of cohabitation with her husband, the wife had

conceived and on June 25, 1943, had given birth to a child. The contest at issue was not the original divorce, which had become final, but a suit to set aside the divorce that had been granted, basically on the grounds of fraud.

The husband defended on the grounds that there had been only one act of intercourse on September 5, 1942, which he claimed did not result in the pregnancy, and that he was tricked into the act at a time that he was still in mental shock over his wife's adultery. Accordingly, any "cohabitation," he urged, was not voluntary.

The trial court found in favor of the wife in this second suit, set aside the decree of divorce, and held the child to be the legitimate offspring of that union.

On appeal, the gravamen of the husband's argument was that one act of intercourse was not "voluntary cohabitation" within the meaning of the statute which denied the granting of a divorce for adultery where "the parties *voluntarily cohabited* after the knowledge of the fact of adultery." The thrust of the contest, then, was whether or not one act of intercourse constituted cohabitation. The husband was urging that it did not.

Justice Hudgins in accepting the wife's argument was attempting to underscore the point that "a single act of sexual intercourse" was sufficient to constitute condonation. He was so incensed with the suggestion that it took more that he went to great lengths to emphasize the point, quoting several sources, including the following from an "ancient anonymous case":

> If therefore a husband, believing his wife's guilt, will afterwards cohabit with her, whether influenced by his compassion or his affections, or induced by her tears, her penitence or her fascinations, he cannot afterwards avail himself of that offense, to obtain a dissolution of the marriage. And he is bound by is remission, although the after repent of his indulgence, from his subsequent reflections, or from the persuasion of his friends, or from the influence of what he may call the public opinion.

The point is that the court was not limiting the definition of "cohabitation"; it was not announcing any

per se rule that "cohabitation" at all times and under all circumstances required "sexual intercourse"; he was saying that one act of intercourse could constitute cohabitation in the context of whether or not an act of adultery was being forgiven; the court was not ruling that there could not be cohabitation without intercourse.

This case was primarily addressing the concept of fraud. As stated by Justice Hudgins:

> The vital question to be determined is whether, in obtaining his decree of divorce, Wilmot T. Tarr, Jr., perpetrated a fraud upon the court and upon his wife.

The trial court's decision was affirmed.

One of the observations made by the court in this decision should infuriate present-day society and the women's liberation movement when the court pronounced that the rule--that a single voluntary act of sexual intercourse by the innocent spouse after knowledge of the offense is sufficient to constitute condonation--should be applied more stringently against the husband than against the wife. In other words, the Court was saying that it is a greater offense for the wife to commit adultery than it is for the husband.

But this case must not be taken out of context. With all the equities involved, neither the trial court nor the court of appeals was disposed to allow the fraud of the husband to stand. Participating in the one act of sex by the offended spouse was sufficient under the facts and circumstances of that case to constitute the forgiveness contemplated by the statute that wiped out adultery as a grounds of the divorce sought--and the term "cohabitation" was enlarged to include "one act of intercourse" in such setting. It is submitted, however, that the decision does not stand for the proposition, as urged by the plaintiff, that cohabitation by definition requires intercourse.