COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Fulton and Ortiz
Argued at Norfolk, Virginia

UNPUBLISHED

BRUCE ANTOINE ROANE

                                                  MEMORANDUM OPINION[*] BY
v.       Record No. 0032-23-1         CHIEF JUDGE MARLA GRAFF DECKER
                                                 APRIL 9, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Charles E. Haden for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Bruce Antoine Roane appeals his conviction for possession of a firearm after having been

convicted of a violent felony in violation of Code § 18.2-308.2. He contends that the trial court

erred by denying his motion to suppress and overruling his objection to a proffered jury instruction.

He further suggests that the evidence was insufficient to support his conviction. We hold that the

trial court did not err, and we affirm the appellant's conviction.

BACKGROUND[1]

In May 2020, Officers Lee Bradberry and Robert Stewart of the Newport News Police

Department encountered the appellant during a routine traffic stop. Officer Bradberry pulled a

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

[1] In analyzing the challenged rulings, "this Court considers the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences that flow from the evidence." See Bryant v. Commonwealth, 67 Va. App. 569, 572 n.1 (2017) (setting out the standard for sufficiency and jury instruction challenges), aff'd, 295 Va. 302, 311 (2018); see also Curley v. Commonwealth, 295 Va. 616, 618 (2018) (setting out the same standard for a motion to suppress).

car over after it failed to come to a complete stop at a stop sign. Once the car pulled to the side of the road, the appellant, who was the backseat passenger on the driver's side, opened the door and started to get out. Officer Bradberry ordered the appellant to get back inside, and the appellant complied.

Bradberry told the driver the reason for the stop and obtained his identification and vehicle registration. As Bradberry spoke to the driver, the appellant rolled down his window and told the officer that the occupants of the car "just gave [him] a ride." At Officer Bradberry's request, the appellant provided his identification to the officer.

Bradberry returned to his patrol car with the driver's and the appellant's identification. He then checked law enforcement databases for "driver's license[] statuses and histories of involvements." While Bradberry was doing so, Officer N.R. Jefferson arrived with a narcotics dog. The dog alerted on the stopped vehicle, prompting the officers to begin a narcotics investigation. Within a few minutes, Officer Rivera and others arrived to assist.

About ten minutes after first initiating the stop, Bradberry returned to the detained car. He told the occupants that the dog indicated "there was or ha[d] been narcotics inside the vehicle." He informed them that they were detaining "the entire car" for investigation. Bradberry explained further that the officers would have everyone get out of the car and, consistent with departmental policy, would handcuff them and move them to the curb.

As Officer Bradberry handcuffed the driver and Officer Stewart handcuffed the front seat passenger, Officer Rivera stood beside the right rear passenger door and watched the appellant and the other man in the back seat. The appellant "shift[ed] from side to side" three or four times and appeared "uncomfortable." Rivera also saw him reach with his right hand toward his right side. Officer Bradberry finished handcuffing the driver, then turned toward the appellant, and told him to "put his hands up." When the appellant complied, his shirt moved upward, and

- 2 -

Officers Rivera and Stewart "noticed a handgun tucked underneath" the shirt in his jeans. Both officers yelled "10-32," the department's "code for a firearm." One or more officers repeatedly shouted "stop reaching" as a struggle ensued. Rivera helped Bradberry and another officer control the appellant until Officer Stewart grabbed the gun.

The appellant was arrested and indicted for possession of a firearm by a convicted felon. Defense counsel made a pretrial motion to suppress, alleging that the police had no legal basis for stopping the appellant, a backseat passenger during a routine traffic stop, when he attempted to leave the vehicle on foot. The trial court ruled that under controlling case law, the seizure of passengers during the traffic stop was "reasonable."

At the appellant's trial, Officers Bradberry, Rivera, and Stewart testified about the circumstances surrounding the stop, as well as the appellant's actions, as the prosecutor played portions of Bradberry's and Rivera's body-worn camera footage for the jury. The evidence established that Officer Stewart retrieved the firearm from the appellant's belt. Stewart testified that he retained custody of the firearm and submitted it to property and evidence. Bradberry, Rivera, and Stewart all testified about the firearm and its characteristics.

The trial court admitted redacted copies of a certified prior conviction order from 1998 and a related "Correction Order" from 2021, entered nunc pro tunc to the date of entry of the 1998 order. Both orders were for possession of a concealed weapon by a felon, a violation of Code § 18.2-308.2, that occurred on October 13, 1997. Based on a challenge by defense counsel, the court found that the only "difference between the[] two orders [wa]s the birthday, a typographical error apparently."

The appellant moved to strike the evidence on two grounds. He challenged the sufficiency of the evidence to prove certain facts about the firearm and the circumstances surrounding entry of the order of correction. The trial judge denied the motions.

While instructing the jury, the court, over the appellant's objection, gave the Commonwealth's instruction defining a firearm.

The jury found the appellant guilty of possession of a firearm by a convicted felon. Because the prior felony was classified as a violent one pursuant to Code §§ 18.2-308.2(A) and 17.1-805(C), he was sentenced by the court to the mandatory minimum period of five years in prison, along with an additional term of two years that was suspended contingent upon his successful completion of two years of post-release supervision.

ANALYSIS

The appellant challenges his conviction on three grounds. First, he argues that the trial court's denial of his motion to suppress was error. Second, he contends the court erred by overruling his objection to a proffered jury instruction. Third, he suggests the evidence was insufficient to support his conviction.

I. Motion to Suppress

The appellant argues that the trial court erred by denying his motion to suppress the firearm found in his possession during the course of the traffic stop. He limits this challenge to issues surrounding his status as a passenger in a lawfully stopped vehicle.

"In challenging the trial court's denial of his motion to suppress [evidence]," the appellant "'bears the burden of establishing that reversible error occurred.'" *Saal v. Commonwealth*, 72 Va. App. 413, 421 (2020) (quoting *Mason v. Commonwealth*, 291 Va. 362, 367 (2016)). On appeal, "we view 'the evidence in the light most favorable to'" the party who prevailed below, in this case the Commonwealth, and afford to it "'the benefit of all reasonable inferences fairly deducible from that evidence.'" *Id.* (quoting *Sidney v. Commonwealth*, 280 Va. 517, 520 (2010)). In ruling on the propriety of a trial court's denial of a motion to suppress, the appellate court considers the evidence introduced at the suppression hearing as well as the

evidence at trial. *See Hill v. Commonwealth*, 297 Va. 804, 808-09 (2019); *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020). And we are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." *Jones v. Commonwealth*, 279 Va. 665, 670 (2010) (quoting *Whitehead v. Commonwealth*, 278 Va. 300, 306 (2009)). In addition, the Court "give[s] due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Reittinger v. Commonwealth*, 260 Va. 232, 236 (2000) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). The trial court's application of the law, by contrast, is reviewed de novo, including its assessment of whether reasonable suspicion or probable cause supported a seizure. *See Brooks v. Commonwealth*, 282 Va. 90, 94-95 (2011). It is in this context that the Court examines the appellant's challenge.

There is no question that "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Mason*, 291 Va. at 367-68 (alteration in original) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). Such a stop, however, is a "relatively brief encounter" and is "more analogous to a so-called '*Terry* stop' . . . than to a formal arrest." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (alteration in original) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117 (1998)); *see Terry v. Ohio*, 392 U.S. 1 (1968). If the officer develops reasonable suspicion or probable cause of a different crime during the time it takes to complete the initial traffic stop and issue a summons, that officer may extend the stop to investigate further as long as the investigation remains reasonable. *See Rodriguez*, 575 U.S. at 354-58 (approving the use of a drug detection dog during a traffic stop where the officers conduct the sniff before the stop has concluded and without prolonging it).

In the instant case, the appellant does not dispute the right of the officers to stop the vehicle and detain the car and its driver to issue the driver a traffic citation. He also does not

challenge the overall duration of the traffic stop. Instead, the appellant contends that absent reasonable suspicion particularized to him, a mere passenger, the officer's order to him to remain in the car when he tried to leave the scene violated his Fourth Amendment rights. Consequently, he argues that the resulting seizure of the firearm was likewise unlawful.

The appellant's argument is directly contravened by controlling case law. In *Arizona v. Johnson*, 555 U.S. 323 (2009), the United States Supreme Court held that during a lawful traffic stop, "a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Id.* at 327 (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)). Under these circumstances, the Court held that the "temporary seizure of [the] driver and passengers ordinarily continues, *and remains reasonable*, for the duration of the stop." *Id.* at 333 (emphasis added); *see also Thomas v. Commonwealth*, 57 Va. App. 267, 275-76 (2010) (applying *Johnson*). The Supreme Court made clear that to detain the passengers as well as the driver in a routine traffic stop, the police do not need to have "cause to believe any occupant of the vehicle is involved in criminal activity." *Johnson*, 555 U.S. at 327. In light of *Johnson*, we hold that Officer Bradberry's order to the appellant to remain in the car during the traffic stop was reasonable and lawful under the Fourth Amendment.[2] Officer Bradberry was also permitted to "order [the appellant] to get out of the car pending completion of the [routine traffic] stop." *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997), *quoted with approval in Johnson*, 555 U.S. at 331. The Supreme Court has reasoned that due to safety concerns, officers must be permitted to control the scene of a lawful traffic stop. That is exactly what took place here.

---

[2] The appellant argues that *Johnson* is distinguishable because the officers in that case suspected that the passenger was in a gang, wanted to question him on that topic, and also thought he might have a weapon. In deciding *Johnson*, however, the Court made clear that these facts were irrelevant to the officers' right to detain the passenger inside the vehicle for the duration of the stop and that this right was, instead, based solely on Johnson's status as a passenger. 555 U.S. at 327, 330-33.

Fewer than ten minutes after the stop began, before Bradberry issued a traffic summons and before the officers removed anyone from the vehicle, they obtained information that a narcotics dog had detected the odor of illegal narcotics emanating from the car. This information provided an additional reason to continue the stop—to investigate the potential drug offense—as well as probable cause to search the vehicle. *See Jones v. Commonwealth*, 277 Va. 171, 180 (2009).

While removing the appellant from the car to conduct the search, the police acted reasonably by directing him to raise his hands for safety reasons. *See Rodriguez*, 575 U.S. at 356; *Welshman v. Commonwealth*, 28 Va. App. 20, 34-35 (1998) (en banc). This action revealed the firearm, which had previously been concealed by the appellant's shirt, in plain view at his waist. Once the firearm was in plain view, the officers were entitled to seize it as evidence of the crime of carrying a concealed weapon. *See Whitaker v. Commonwealth*, 279 Va. 268, 277-78 (2010) (holding that an individual's act of carrying a concealed weapon provided probable cause for arrest and that possession of a concealed-carry permit was a defense for assertion at trial).[3]

For these reasons, we hold that the trial court did not err by denying the appellant's motion to suppress.

---

[3] The appellant suggests that the recent decriminalization of marijuana and related legislation prevented the police from using the positive canine sniff as the basis for their ongoing investigation. Defense counsel, however, did not make this specific argument in the trial court, and it may not be raised for the first time on appeal. *See Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019). Consequently, we do not consider the argument. *See Dietz v. Commonwealth*, 294 Va. 123, 134 (2017) (noting that an appellate court decides cases on "the best and narrowest grounds" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))). "Rule 5A:18 contains both a good-cause and ends-of-justice exception. However, the appellant does not contend that either exception to Rule 5A:18 applies, and this Court does not raise those exceptions *sua sponte*." *Jones v. Commonwealth*, 71 Va. App. 597, 607 n.9 (2020).

## II. Jury Instruction

The appellant argues that the trial court erred by overruling his objection to the Commonwealth's jury instruction defining the term "firearm" for purposes of Code § 18.2-308.2.

The law regarding instructions is clear. "Whether to give or deny [a particular] jury instruction[] 'rest[s] in the sound discretion of the trial court.'" *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (third alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). An appellate court's responsibility in reviewing instructions "is 'to see that the law has been clearly stated and that the instructions cover all issues . . . fairly raise[d]'" by the evidence. *Id.* (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). And a challenged instruction must be supported by more than a scintilla of evidence when the evidence is viewed in the light most favorable to the proponent of that instruction. *See Pinedo v. Commonwealth*, 72 Va. App. 74, 81 (2020). Finally, whether an instruction accurately states the law is reviewed de novo. *Sarafin v. Commonwealth*, 288 Va. 320, 325 (2014).

The appellant suggests that the prosecution did not offer any "evidence regarding the definition of a firearm." In support, he notes that the Commonwealth chose not to call "an expert witness . . . from the lab" and argues that it did not offer "any details concerning the particular firearm" he was alleged to have possessed. The appellant contends that giving the definitional instruction under these circumstances was inappropriate and misleading "because it suggested that an inference of guilt could be drawn [without] any proof that the item recovered from [him]" in fact met that definition.

The Commonwealth's instruction, a model jury instruction, provided as follows: "A firearm is an instrument designed, made, and intended to expel a projectile by means of an explosion. It is not necessary that the firearm be operable, capable of being fired, or have the actual capacity to do serious harm." *See* Model Jury Instrs.—Crim. No. 18.622; *Huguely v.*

*Commonwealth*, 63 Va. App. 92, 129 (2014) (in upholding a trial court's decision to give a proffered jury instruction, noting that it was a model instruction). Contrary to the appellant's suggestion, the Commonwealth was not required to prove the definition itself. The definition is contained in the statute, as interpreted in the applicable case law and set out in the model instruction. *See* Code § 18.2-308.2(A) (incorporating the definition in Code § 18.2-308(A)); *Jordan v. Commonwealth*, 286 Va. 153, 157-58 (2013). It was the duty of the trial court, with the help of the parties, to give all instructions required to guide the jury in deciding the case. *Smith v. Commonwealth*, 296 Va. 450, 462 (2018) (noting that jurors are not expected to have independent knowledge of the law). We hold the trial court did just that and did not err in determining that the instruction properly stated the law.

The evidence introduced at trial supported the court's decision to give the instruction. Contrary to the appellant's assertion, a witness does not have to be "qualified as an expert in order to testify about the nature of [a] weapon." *Murray v. Commonwealth*, 71 Va. App. 449, 457 (2020). Even a lay witness can give an opinion "if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the witness'[s] perceptions." Va. R. Evid. 2:701. The prosecution, therefore, was not required to call a witness from the forensic laboratory to provide testimony about the weapon to support the proffered instruction. *See also Murray*, 71 Va. App. at 458 ("Given [the] general constitutional right to keep and bear them, firearms are generally not so exotic that . . . extensive or specialized expertise [is required] for a great many lay persons [who are] familiar[] with them to correctly identify a firearm as such.").

The testimony about the weapon given by three different law enforcement officers provided the necessary quantum of evidence to support the instruction. That evidence included officer testimony identifying the gun as a black "Glock 42" .380 caliber gun with a magazine

- 9 -

inside it that contained six bullets. *See Jordan*, 286 Va. at 158-59 (citing the victim's identification of the item as a particular make and caliber of pistol as evidence supporting the inference that the item was a firearm). Officers Bradberry and Stewart also noted the gun's serial number. *See generally* 18 U.S.C. § 923(i) (requiring licensed firearm manufacturers to include a serial number on each weapon).

The evidence further provided a foundation for establishing that the item was a weapon "designed, made, and intended to expel a projectile by means of an explosion," as defined in the instruction. Officer Bradberry explained that a "BB gun fires BBs" whereas a "real firearm fires bullets." Rivera testified that the item seized from the appellant was a firearm, not a BB gun. Officer Stewart confirmed that the Glock he seized from the appellant contained a magazine loaded with bullets, not BBs. Bradberry explained that when a firearm is discharged, "the firing pin hits the igniter[,] which releases the powder" that "caus[es] the explosion" and "mak[es] the *bullet* fly out of the firearm." (Emphasis added). Officer Stewart also testified that he test-fired the "firearm" prior to trial and it worked as designed. While the Commonwealth was not required to establish that the firearm was operable, proof that it was operable when he test-fired it provided evidence that it was, in fact, designed to function as a firearm and was not merely a replica of a firearm.

This evidence amply supported the trial court's decision to overrule the appellant's objection to the proffered "firearm" instruction.

### III. Sufficiency of the Evidence

The appellant contends that the evidence was insufficient to support his conviction for possession of a firearm by a convicted felon.

In this Court's review of the sufficiency of the evidence, it will not disturb the judgment of the jury unless it is "plainly wrong or without evidence to support it." *See* Code § 8.01-680.

- 10 -

If the evidence supports the conviction, "the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Commonwealth v. Perkins*, 295 Va. 323, 327-28 (2018) (quoting *Courtney v. Commonwealth*, 281 Va. 363, 368 (2011)).  In conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

It is the function of the trier of fact, in this case the jury, to determine the credibility of witnesses and the weight afforded the testimony of those witnesses.  *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016).  This Court does not revisit these determinations on appeal unless reasonable people, "after weighing the evidence and drawing all just inferences therefrom, could reach [only the contrary] conclusion."  *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)).

It is axiomatic that evaluating the sufficiency of the evidence "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"  *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).  And appellate review requires a "totality-of-the-evidence analysis" rather than a "fragmented assessment of the record."  *Id.* at 464, 466.  The evidence must be "weigh[ed] . . . collectively," not viewed "in isolation."  *Id.* at 466.

The appellant argues the evidence failed to prove two specific elements of the offense—that the item seized from him was a firearm within the meaning of Code § 18.2-308.2 and that he had a prior felony conviction.[4]

1. Sufficiency of Proof that the Item was the Firearm Seized

The appellant challenges the sufficiency of the evidence to prove that the firearm admitted into evidence at trial was the firearm he had in his possession immediately prior to his arrest.[5]  He argues that although it appears from the video that the police removed a gun from his waistband, the record is "unclear [regarding] whether the firearm was a Ruger or a Glock" and the prosecution had to "prove [its] case" by showing that the gun admitted at trial was the same gun seized from him.  He further suggests that gaps existed in the evidence regarding the gun, emphasizing that the item was in the possession of law enforcement for two years and had eight sets of initials on the box purporting to show "where [it had] been" during that time.[6]  In essence,

---

[4] The appellant does not, in this Court, challenge the *admissibility* of the firearm or the prior conviction orders.  *See generally Bowling v. Commonwealth*, 51 Va. App. 102, 106 (2007) (recognizing that admissibility and sufficiency "are two completely separate legal questions, requiring two distinct legal analyses").  Further, to the extent the appellant attempts to challenge the sufficiency of the evidence with regard to any other elements of the offense, any such challenge is not properly before this Court on appeal.  *See* Rules 5A:18, 5A:20(e).

[5] We assume without deciding that the appellant's brief presents adequate citation to authority to support this argument.  *See* Rule 5A:20(e); *Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015) (holding that "resolution of the merits" of the case provided "the best and narrowest ground" for decision and declining to address a possible procedural bar).

[6] With regard to proof that the item was a firearm, the appellant does not posit that the evidence failed to prove the item was designed to expel a projectile.  To the extent he suggests that the prosecution failed to prove that the item was "a working gun," defense counsel conceded below that operability is not a requirement under Code § 18.2-308.2.  *See Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc) (holding that a legal concession may "qualif[y] . . . as a waiver").  *See generally Jordan*, 286 Va. at 157-58 (holding that proof of operability is not required under Code § 18.2-308.2).  Therefore, we do not address these aspects of this element of the offense.

he contends that the evidence regarding the object seized from him was so weak that no rational jury could have given it sufficient weight to support his conviction for possession of a firearm.

The record, viewed under the proper standard, supports the appellant's conviction because the weight of the evidence establishes that the firearm introduced at trial was the same firearm taken from the appellant immediately prior to his arrest. *See generally Baez v. Commonwealth*, 79 Va. App. 90, 120-22 (2023) (addressing a challenge to the sufficiency of the evidence to prove that the defendant possessed a controlled substance in light of her "alleg[ation] that] the substance tested . . . was not the substance she possessed"); *Jones v. Commonwealth*, 21 Va. App. 435, 441-43 (1995) (en banc) (considering a claim that the evidence was insufficient to prove that the substance obtained from an informant and determined to be an illegal drug had been purchased from the defendant). The evidence proved that Stewart was the officer who seized the weapon as soon as he spotted it at the appellant's waist during the traffic stop that became a narcotics investigation. Officer Rivera saw the butt of the "black handgun" at the appellant's waist at the same time as Stewart. Rivera and Officer Bradberry then watched Stewart retrieve the gun. Officer Stewart testified that the gun was a black Glock 42 with a magazine inside it that contained six bullets or cartridges.

Stewart stored the Glock and its magazine in the trunk of the patrol car and submitted the items to "Property & Evidence" at the end of his shift on the day of the appellant's arrest. To do so, he filled out a card with an item number and "Property & Evidence" number. He wrote down that the item was a Glock with serial number ACZA169, signed the card, and "placed th[e] firearm and the magazine into a Property & Evidence locker." Officer Bradberry testified at trial that he recorded in his police report that the gun seized from the appellant was a Glock 42 .380 caliber handgun with serial number ACZA169. Officer Stewart also confirmed, while testifying

at trial, that the serial number on the Glock firearm he was asked to identify at that time, ACZA169, was the same serial number he wrote down on the date he seized the Glock.

This evidence, accepted as credible by the jury, was sufficient to prove that the Glock handgun introduced at trial was the same weapon taken from the appellant on the day of his arrest. *See Church v. Commonwealth*, 71 Va. App. 107, 122-23 (2019) ("Once th[e] threshold for proving admissibility has been met, any [alleged] gaps in the evidence are relevant to the trier of fact's assessment of its weight . . . ."); *Thorne*, 66 Va. App. at 253 (recognizing that the jury, as the fact finder, determines the credibility of witnesses and the weight of the evidence). Although Officer Bradberry admitted he testified from his notes at the preliminary hearing that the firearm seized from the appellant was a different brand, a Ruger, and bore a different serial number, he acknowledged that he did not personally handle the weapon at the time of the appellant's arrest. Instead, it was Officer Stewart who seized and took custody of the weapon. Additionally, Stewart maintained custody of the firearm except when it was in the possession of other authorized law enforcement personnel, as documented in part by initials recorded on the outside of the box in which the gun was stored. And significantly, Officer Stewart never equivocated in his identification of the firearm by brand and serial number. *Cf. Bassett v. Commonwealth*, 222 Va. 844, 854 (1981) (in rejecting a challenge to the admissibility of a gun, noting that an item with a serial number "possesses characteristics [that] are fairly unique, readily identifiable, and relatively impervious to change").

Consequently, the weight of the evidence was sufficient to prove that the firearm admitted at trial was the same firearm seized from the appellant immediately prior to his arrest, thereby supporting his conviction for possession of a firearm by a convicted felon.

## 2. Sufficiency of Proof of a Prior Conviction

The appellant contends the evidence was insufficient to prove he had the requisite prior conviction for a violent felony. He notes that the two prior conviction orders relied upon by the prosecution list his name but reflect two different birthdates. He argues that these orders are "of suspect validity," particularly given that they were signed by two different judges more than twenty years apart and the second one was entered in 2021, "after [the instant] case had started."

Code § 8.01-428(B) permits a trial court to correct "[c]lerical mistakes in all judgments" and "errors therein arising from oversight." The court may do so "on its own initiative or upon the motion of any party and after such notice[] as the court may order." Code § 8.01-428(B). Although located in a portion of the Virginia Code that governs civil procedure, the statute applies to civil and criminal proceedings alike. *See D'Alessandro v. Commonwealth*, 15 Va. App. 163, 168 (1992) (citing *Lamb v. Commonwealth*, 222 Va. 161, 165 (1981)). Additionally, the statute prescribes no time limit for making such corrections. Code § 8.01-428(B); *see Lamb*, 222 Va. at 165. It permits the use of an order entered nunc pro tunc to correct such an error despite the fact that more than twenty-one days have passed since entry of a final order, as long as the record supports a finding that the error was truly a clerical one. *See Minor v. Commonwealth*, 66 Va. App. 728, 740-42 (2016).

When using its nunc-pro-tunc authority in this way, "the court does not reacquire jurisdiction over the case." *Davis v. Mullins*, 251 Va. 141, 149 (1996), *quoted in Minor*, 66 Va. App. at 742. Instead, it "merely corrects the record by entry of an order nunc pro tunc, under the accepted fiction that the order relates back to the date of the original action of the court 'now for then.'" *Id.* (emphasis omitted). The statute permits the court to "make the record 'speak the truth'" and reflect "judicial action [that] has actually been taken." *Id.* (first quoting *Netzer v. Reynolds*, 231 Va. 444, 449 (1986); and then quoting *Council v. Commonwealth*, 198 Va. 288,

292 (1956)). A court, however, may not use this authority to take action that it intended to take but did not and may merely wish in hindsight it had taken. *See id.* at 149-50. In other words, a court may enter a nunc pro tunc order to fix a clerical error as long as it determines that the error was truly clerical and the record supports that determination. The record demonstrates that is precisely what happened here.

The two orders at issue reflect that a person with the appellant's name and unique social security number was convicted for possession of a concealed weapon by a felon, a violation of Code § 18.2-308.2, based on an offense date of October 13, 1997. Both orders are copies certified by a circuit court deputy clerk. Additionally, the orders were entered by the same circuit court in which the appellant was tried for the instant offense. The first order was entered by Judge Askew in 1998, and the trial judge here identified the signature on the second order, entered in 2021, as that of Judge Papile. The second order, titled "Correction Order," was entered "nunc pro tunc as entered by Judge Askew on" the date of the first order. The first order reflected a birthdate of "4-16-78." The second order corrected the date to "4-26-78." The prosecutor pointed out to the jury in closing argument that the only substantive difference between the certified prior orders was that the second one changed the defendant's birthdate and matched the birthdate on the identification the appellant gave to Officer Bradberry on the day of his arrest for the instant offense.

This evidence was sufficient to permit the jury, as the finder of fact, to determine that the correction order accurately reflected the appellant's 1998 conviction for the offense of possession of a concealed weapon by a convicted felon in violation of Code § 18.2-308.2 and that the *only* substantive difference between the two orders was a correction of the birthdate listed (from the 16th to the 26th). As noted, both orders bear the identical name and social security number—the same name and social security number on the identification that the

appellant provided to Officer Bradberry shortly prior to his arrest for the instant offense. While "many persons have the same name," *United States v. Mitchell*, 518 F.3d 230, 234 (4th Cir. 2008), a social security number is a unique number that is "assigned to and identif[ies] a specific individual," *Neal v. Fairfax Cnty. Police Dep't*, 295 Va. 334, 346 (2018); *see Mitchell*, 518 F.3d at 234 (recognizing a social security number as "sufficient alone to identify a specific individual"). Consequently, the record supports the conclusion that the single-digit difference between the birthdate in the original order and the appellant's birthdate was a clerical error, *not* a failure to adequately identify the person who was the subject of the prior conviction order.

We conclude, based on this record, that the evidence was sufficient to prove that the appellant had the requisite prior conviction for a violent felony at the time he possessed the firearm at issue in this case.

CONCLUSION

The trial court did not err by denying the appellant's motion to suppress, overruling his objection to the Commonwealth's jury instruction, or concluding the evidence was sufficient to support his conviction. As a result, his conviction for possession of a firearm by a violent felon in violation of Code § 18.2-308.2 is affirmed.

*Affirmed.*