## CIRCUIT COURT OF THE CITY OF RICHMOND

Helen Kay Denson Bandas

   v.

William Irvin Bandas

### Case No. N-7330-D

By JUDGE MELVIN R. HUGHES, JR.

### November 19, 1991

The wife (Kay) in this divorce proceeding, pursuant to a written agreement to arbitrate issues of support and equitable distribution, has moved the Court to confirm the arbitrator's award. The husband (William) opposes on the ground that the award is unconscionable and violates public policy. Kay also moves for attorney's fees as sanctions under § 8.01-271.1.

After Kay filed for divorce in April, 1989, the parties jointly moved the Court to enter an order submitting their disputes on these issues to arbitration. The order was entered on January 3, 1990, and provided that the terms of the agreement be ratified, affirmed, and incorporated with the case retained on the docket. On December 27, 1990, the Court entered a decree of divorce in Kay's favor on the ground of living separate and apart, etc. In that decree pursuant to the parties' request, the Court "re-

tain[ed] jurisdiction under Virginia Code § 8.01-577 *et seq.* by reason of the submission of all issues in this cause to arbitration in accord with the Agreement dated September 11, 1989, filed herewith and ratified and incorporated into this decree."

The parties chose the arbitrator. He took evidence for seventeen days. He heard argument seven additional days. During these times, he issued a series of five awards covering every contested property interest between the parties, spousal and child support, and visitation. Following the proceedings before the arbitrator, the Court has conducted three separate hearings. At these times, the parties addressed in argument and at one of the hearings presented evidence on three issues: (1) confirming the award, (2) modifiability of the award generally, and (3) modifiability of the spousal support award on evidence of a change in circumstances.

The agreement, as Kay, wife, points out, provides:

The parties further agree that either of them may submit to the Court the decision of the Arbitrator as a final and binding agreement between them as to the issues arbitrated, said Agreement to be affirmed, ratified, and incorporated by reference in an appropriate order or decree pursuant to Virginia Code § 20-109.1

The agreement further provides that the governing law is the Uniform Arbitration Act which is codified in Section 8.01-581.01 *et seq.* The parties agree there is no case law from the Supreme Court of Virginia or Court of Appeals of Virginia on vacating an arbitration award in a domestic relations case. The Court will proceed to set out William's contentions in support of his opposition to confirming the award, analyze the issues, and discuss reasons and conclusions.

*William's Contentions*

William urges the Court to vacate the arbitration award on the following grounds:

*Spousal Support*

The arbitrator awarded Kay $2,450.00 per month for her support. William contends that, although he was convicted of a felony in 1986 and sentenced to serve a period in excess of one year and was so confined, the arbitrator erroneously concluded that Kay was entitled to a divorce on this ground under § 20-91(3)[1]. William contends that, in addition to a felony conviction and confinement, the statute requires that cohabitation not be resumed. William says the evidence shows that while he was in prison, he and Kay conducted themselves in ways that constitute cohabitation despite his incarceration and despite the absence of sexual intercourse. According to William, the arbitrator improperly precluded a resumption of cohabitation without viewing the law of cohabitation as involving a bundle of duties, responsibilities, rights and incidents, all of which he contends continued during the time he was in prison. Before the arbitrator, William argued that Kay's actions toward him after his imprisonment was condonation, a forgiveness of this ground for divorce. The arbitrator rejected this position stating that condonation was not possible under the circumstances because full marital relations did not resume while William was incarcerated. According to William, because the arbitrator erred in concluding that Kay had grounds for divorce for his felony conviction and sentence under § 20-91(3), he also erred in finding the conviction and imprisonment was recrimination barring him from obtaining a divorce on the ground of Kay's proven adultery.

William also contends the arbitrator failed to consider Kay's adultery as a factor contributing to the dissolution of the marriage under § 20-107.1, the statute governing maintenance and support of spouses. According to William, the facts present a picture of Kay "playing her husband for a fool." She pretended support and involvement during

---

[1] Section 20-91. Grounds for divorce from bond of matrimony. -- A divorce from the bond of matrimony may be decreed: (3) Where either of the parties subsequent to the marriage has been convicted of a felony, sentenced to confinement for more than one year, and confined for such felony subsequent to such conviction, and cohabitation has not resumed after knowledge of such confinement . . .

his imprisonment and at the same time had affairs with other men only to decide to terminate the marriage to William's surprise upon learning he would be released.

Finally, William contends the arbitrator erred substantially in failing to properly weigh all the statutory factors listed in § 20-107.1 in the spousal support award. With that award amounting to $29,400.00 annually, the arbitrator improperly adjusted the wealth of the parties after first finding the wife had a pre-award annual income potential of $38,000.00 to $43,000.00. That income potential along with $41,600.00 in annual interest from the division of marital property makes a post award annual income for Kay of over $80,000.00. The spousal award due from him, William says, reduces his annual income to $88,053.00, down from a pre-award annual adjusted amount of $117,453.00.

### Equitable Distribution

The arbitrator awarded Kay $723,653.00 as division of the parties' marital property. William contends this award exceeds the true value of the marital property by $75,458.00. In other words, the true value of the marital property, as William sees it, is $648,195.00 not $2,468,108.00 which the arbitrator found it to be. William asserts the arbitrator arrived at the award despite having found that much of the marital property was paid for by him, much of it acquired prior to the marriage and resulted from commingling his separate property with marital property. William seems to argue that the arbitrator did not trace his property and find it separate, as he should have, and failed to consider his monetary contributions that could not be traced. If the arbitrator had done so, the equitable marital property value would have been established at $648,195.00. William maintains the arbitrator came to his conclusions on equitable distribution without stating any reasons or providing explanation.

Further, William says the arbitrator was capricious in refusing to correct a mathematical error on the $723,653.00 award. The figure of $2,495,287.00 as the total value of marital property is mentioned in the statement of the award while the figure of $2,468,108.00 is carried in an exhibit to the statement. William contends the arbitrator should have adjusted the award according

to the lower figure in the exhibit when requested to do so but did not.

Lastly, William asserts the arbitrator erred in finding his interest in a partnership was marital property. This is incorrect because he had a one-half interest before the marriage and acquired the other half after the marriage. It was error for the arbitrator to call the entire interest marital property, William argues.

### Child Support

The arbitrator awarded wife the sum of $1,350.00 child support for the one child of the marriage. William argues on brief that under the facts, this amount is without regard to § 20-108.2 (the statute listing factors to be considered in child support) and the statutory scheme of joint parent responsibility.

### William's Basis for Vacating the Award

At the hearing on Kay's motion to confirm the award, William argued that his differences with the arbitrator center on entitlement to spousal support and the method used to determine the support awards and equitable distribution. The Court cannot countenance the award, William says, because the arbitrator gave license to Kay to commit adultery. He urges that unlike arbitration of a commercial, business or private matter, domestic relations is a matter of public concern over which the state has a high interest. Pursuant to the Court's continuing supervision over the case, according to statutes and as a matter of inherent equity power, the Court should reject the arbitrator's decisions as the parties' agreement because of gross errors of law. He wants the Court to instruct the arbitrator on the law and require him to modify the award according to those instructions.

### Validity of the Award and Standards for Review

William does not raise any issue regarding the arbitration agreement itself. It is evident that the parties elected to let the arbitrator decide the issues. This he did after much in the way of hearings, the taking of

evidence with the introduction of documents as exhibits, etc., and listening and considering the parties' arguments.

Notwithstanding the agreement to make any arbitration award "final and binding," William challenges the validity of the award under § 20-109.1. The statute provides that the "court may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce whether from the bond of matrimony or from bed and board any *valid* agreement between the parties" (emphasis supplied). The method by which the parties chose to arrive at that agreement, by arbitration, has some influence on but does not preclude the Court in the exercise of its discretion under § 20-109.1 to make the parties' agreement part of the Court's order.

Because the parties agreed to be bound by the arbitration statutes, these statutes and particularly the one dealing with setting an award aside must be considered in evaluating William's claim that the award is unconscionable and violates public policy. In its pertinent parts, Section 8.01-581.010 on vacating arbitration awards provides as follows:

Section 8.01-581.010. *Vacating an award.*-- Upon application of a party, the court shall vacate an award where:

1. The award was procured by corruption, fraud or other undue means;

2. There was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;

3. The arbitrators exceeded their powers;

4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 8.01-581.04, in such a way as to substantially prejudice the rights of a party; or

5. There was no arbitration agreement and the issue was not adversely determined in proceedings under § 8.01-581.02, and the

> party did not participate in the arbitration hearing without raising the objection.
>
> The fact that the relief was such that it could not or would not be granted by a court of law or equity is not grounds for vacating or refusing to confirm the award.

William opposes the award on the ground the arbitrator exceeded his powers under the terms of the statute in that he committed gross errors of law. In a case involving arbitration in a commercial setting, the Supreme Court of Virginia said that the party seeking to set aside has the burden to show arbitrator misconduct by clear proof. Further, the Court said the award should be interpreted liberally so as to uphold it, and a party attempting set aside has three substantial obstacles: (a) the conclusiveness of the award as binding; (b) the presumption in its favor; and (c) the burden of showing arbitrator misconduct by convincing proof. *Howerin Residential Sales v. Century Realty*, 235 Va. 174, 179 (1988). Remembering as well that § 8.01-581.010 mentions that an award that provides relief a court could or would not give is no grounds for refusing to confirm the scope of review of arbitration awards generally, and even those involving domestic relations ought not be broad. Therefore, under the statute, an award will not be set aside for mistakes of law or fact. This stands to reason because if the court were to take a painstaking merit review of the arbitrator's decisions, then arbitration would become another step in the judicial process. The problem comes when, as here, there is a complaint that the arbitrator totally disregarded the law. Since the suggestion is the Court should not, by incorporating the award in an order, allow something which the Court under law could not or should not do itself, the test should be whether there is a gross miscarriage under the circumstances. Lastly, because arbitration is a product of a private contract between the parties, the Court should play a limited role in the settlement of disputes taken to arbitration by them.

*Discussion*

William bases his objection to confirmation on (1) public policy and (2) unconscionability. The former is grounded on the idea of a gross misunderstanding of the law while the latter is grounded on the notion of gross disparity in value,[2] *Drewry v. Drewry*, 8 Va. App. 460 (1989). Even considering the importance of marriage and family relations, there is no indication in this record that the arbitration award is unconscionable or is against public policy.

On the matter of gross errors of law, the arbitrator's decisions on the issues do not show manifest or gross error. The record amply supports the arbitrator's conclusions that cohabitation was not resumed. Cohabitation is the totality of rights, responsibilities and duties that exist between married persons and involves more than sexual relations, as William maintains. At the same time, matrimonial cohabitation has been described as importing a continuing condition of *living together* and carrying out the mutual responsibilities of the marital relationship, *Colley v. Colley*, 204 Va. 225, 228-229 (1963); *Rock v. Rock*, 7 Va. App. 198, 201 (1988). The reasons the arbitrator sets out on pages 16 to 18 of the Fourth Arbitration Award are strong and cogent and find support in the voluminous record. It is not entirely unreasonable to conclude the parties could not and did not resume cohabitation because William's incarceration made it impossible for them to live together as married persons. The decision that Kay's actions do not constitute condonation is also within the limits the facts set for this finding. Also, given that a ground existed for a divorce in Kay's favor under § 20-93(1), the arbitrator could, as he did, find that the William was not faultless and that his fault was recrimination to Kay's proven adultery.

Next [is] the matter of Kay's adultery making any support award to her unconscionable and violative of public

---

[2] Except for the claim that the arbitrator failed to correct a mathematical error on which the monetary award was made, William does not claim that the arbitration process itself was conducted unfairly or that the issues were not arbitrable.

policy. William's argument here is premised on the idea that Kay should not reap a reward in the face of marital misconduct. The General Assembly by its latest amendment of § 20-107.1 recognizes that while adultery is a serious marital misdeed, there can be proper circumstances where support should be allowed to the party guilty of such conduct. The statute allows support where "from clear and convincing evidence . . . a denial of support and maintenance would constitute a manifest injustice." Obviously, deciding that a wife or husband would or would not be entitled to support in the case of adultery turns on the circumstance of each case. The arbitrator had all the facts before him involving the relative economic circumstances of the parties, the circumstances surrounding the marriage of the parties, duration, their relationship, etc., before and after William's imprisonment, the parties financial wherewithal before and after divorce, as well as evidence on remaining factors under § 20-107.1. The arbitrator wrote and said he considered all these things and gave wife a support award. In view of the policy favoring arbitration, violation of a particular public policy by the arbitration award must be clear. When the law of cohabitation, recrimination, condonation and spousal support under § 20-107.1 is considered, no law and no particular public policy consideration is violated by what the arbitrator did here. While the policy is to keep marriages intact and not allow any one to gain advantage by their own wrongdoing, grounds for terminating the marriage and for support are present here, despite misconduct. This is entirely consistent with law, and indeed, policy is followed, not defeated.

With the law issues out of the way, the arbitrator's decisions on equitable distribution and support have even more weight because these issues bear more on the financial incidents of the award. The basis for William's concerns in this aspect is the shift in income and net worth before as compared to after marriage. The shift in income or income potential, as William sees it, has been stated above. The shift in net worth is shown in an analysis which William provided to the Court in support of his position. The analysis shows:

|       | Before Marriage | After Marriage | Difference    |
|-------|-----------------|----------------|---------------|
| Bill  | $2,894,231      | $2,403,347     | -$490,884*    |
| Kay   | -0-             | 811,153        | + 811,153     |
|       |                 |                |               |
|       | Total Shift     |                | $1,302,037    |

\* Note: Bill's stock portfolio value is down $113,839.00 from the value established at the hearing many months ago. (The evidence presented showed a portfolio value of $799,011.00; those same securities are now valued at $658,172.00). As a result, his net worth is now $2,289,508 and down *$604,723.00* after the award.

This brings the shift in net worth to $1,415,876.00.

The $811,153.00 figure comes from the total of $723,653.00 representing Kay's equitable distribution award plus $87,500.00 representing one-half of the tangibles she received. For the reasons mentioned in the next section, the Court decides that any shift in income or income potential of the parties is not shocking or grossly disparate. Nor is the shift in net worth. The framework under which the parties decided to deal with these issues -- by arbitration -- and more, the nature of these interests as financial and property are important. These and the following bases carry even more to the resolution of the financial issues between the parties.

First, it should be remembered that the parties' arbitration agreement contains a provision listing the issues given the arbitrator for decision. While the arbitrator's decisions on them are not automatically approvable by the Court, the parties, both represented by counsel at the time, agreed those decisions would be final and binding such that, when made, they would be their own. While the Court has an obligation to see that anything it confirms by order is fair and in keeping with the law, this task should not invade the parties' agreement and should take into account the standards the parties set for themselves and by which they ask the Court to review their requests. Since the parties chose the standard, the Court should not attempt to rejudge the decisions

of the arbitrator without some showing that a positive mandate of law would be violated if the award is carried out. Second, the record itself has not revealed anything manifestly unfair or illegal about the arbitrator's determinations. Kay in her Memorandum on Behalf of Plaintiff details on pages 3 to 5 the steps the arbitrator took in deciding the questions before him over a period of time from handing down the first arbitration award on December 27, 1989, to May 17, 1991, when the Fifth and Final Arbitration Award was rendered. In June, 1990, the arbitrator proposed an award consisting of a division of tangible personal property and the amount of monetary award. He also found an entitlement to spousal and child support in Kay's favor but left the amount open. He also proposed how attorney fees would be divided. The parties were then given an opportunity to object and argue their objections before the arbitrator. During this process, the arbitrator acknowledged an error had been made in the value of marital property figure as mentioned above and changed the figure to $2,468,108.70, the lower figure. He decided against going back through the voluminous record to identify any difference the change would make because of reasons of time and expense. He found any impact would be negligible and changed the figure to that used in the exhibit. The arbitrator identified in a schedule the assets of the parties indicating property he found separate, marital and their values. He found that while, prior to the marriage, William had a net worth of $2,894,231.00, the transmutation doctrine under *Smoot v. Smoot*, 233 Va. 435 (1987), by commingling of separate assets with marital assets made the great extent of the parties' property marital property. He also made decisions on which of the parties' tangible personal property was separate or marital. The arbitrator divided all tangible marital property between the parties equally. He considered the factors enumerated in § 20-107.3(E) and awarded Kay the $723,653.00 monetary award in addition to the tangibles awarded her as marital property. While William came into the marriage with substantially more separate property than Kay did, there is no showing that under *Smoot*, it was grossly wrong for the arbitrator to decide in arbitration that separate property changed to marital property.

The arbitrator found that Kay had in her possession $128,668.00 worth or marital property exclusive of one-half of the $748,653.00 sale price of the marital residence ($374,326.00). The total of these he found came to $502,994.00 and thus required William to pay Kay $220,654.00 as the cash portion of the monetary award. The process the arbitrator used was fair, painstaking and reasonable. This background does not require the Court -- as it should not in arbitration review matters generally -- to rejudge what the arbitrator had before him. The fact of a shift or the extent of it demonstrated here is something that could be anticipated given the submission of the issues to arbitration and the finances of the parties before and during the marriage. It is not grossly unfair or entirely unreasonable to implement the award based on what the arbitrator had to consider after he took extensive evidence and gave each side the opportunity to present their positions.

### Modifiability of Spousal and Child Support

At the last hearing, the Court took evidence on William's request to reduce support obligations made by the arbitrator's awards. William maintains that the permanent awards can be modified because the arbitration agreement makes no mention that modification can occur only by arbitration. Kay, relying on § 20-109, states that the statute restricts the Court to the terms of the contract, the Arbitration Agreement, and since the arbitrator has made his decision, upon approval, the amount stays at the level set by the arbitrator. Kay also relies on the arbitrator's award as "final and binding" according to the terms of the Arbitration Agreement. The pertinent part of § 20-109 states:

> However, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract.

The Court interprets this provision to mean that any initial order directing the payment of support must be in line with that specified in the parties agreement. Once such a provision becomes a part of the Court's order, it can and should be modified upon proof of a change in circumstances making it no longer appropriate for the situation then obtaining. Here, William is proceeding on the basis that the support award, if approved, should be modified because the circumstances extant at the time of arbitrator's award are different now suggesting modification of the amounts downward. To put the issue in further perspective, it is necessary to summarize briefly the evidence adduced at the hearing.

William testified that since the arbitrator's award, unlike before, he is unemployed. William was a licensed attorney before the criminal conviction that led to his imprisonment. After release from prison, he became employed with an accounting firm in Washington, D.C., at an annual salary of $20,000.00. He has also been employed with another firm not in the accounting field in that firm's marketing department but was fired because "business [was] bad." He testified that he is actively seeking employment and paying close attention to maximizing income from investments. The only income he receives is that which is on an income statement which was submitted into evidence. The statement shows a monthly gross income of $9,277.00 and a net income of $6,584.28. The statement also shows total monthly expenses at $6,106.00. William testified that his state of health is "awful" because of fibrositis, prostate problems, and periodontal disease.

Kay testified that she has no income from her business as an interior decorator and has received none since December, 1989. She was asked about her share of the proceeds from the sale of the marital abode. She reported that she used her $374,000.00 split to invest in a bed and breakfast business her sister operates. This business, according to her testimony, barely sustains itself. The arbitrator found that Kay's decorator business produced income in the past but that her income went down substantially because of the time she has had to devote to this domestic litigation.

The arbitrator found that William's net worth was around $2.8 to $2.9 million and that approximately $1.0

million of that sum was in the form of marketable securities. William was employed at the time of arbitration, and the arbitrator knew this. The arbitrator was also told about William's health problems without any supporting medical testimony or records as was the case at the hearing before the Court. Except for the loss of $20,000.00 in annual income from employment, all aspects of the parties' economic wherewithal is about the same now as it was when the arbitrator conducted the hearings.

William's annual income is now $111,324.00. Considering the question either way, that the Court can set the support amount based on the evidence before it despite what the arbitrator did, or that the Court should modify an approved award because there has been a change in circumstances, the Court finds the overall financial picture is roughly the same, not significantly changed from what was before the arbitrator. William has considerable wealth, and Kay's financial status had not changed significantly to effect her ability to better support herself. Of course, the Court will have continuing jurisdiction under § 20-108 to provide an adjustment to any support level required by its order. The circumstances do not merit any adjustment now.

*Sanctions and Attorney's Fees*

Finally, Kay requests sanctions and attorney fees under § 8.01-271.1 because of William's opposition to her confirmation request. The request is made because, according to her written motion:

> [d]efendant has no right to suddenly, after almost two (2) years of taking evidence and hearing arguments to object to plaintiff's application for confirmation of the awards and it is frivolous for him to so do when he agreed in the Arbitration Agreement that either party "may submit to the Court the decision of the Arbitrator as a final and binding agreement between them" as to the issues arbitrated, said Agreement to be affirmed, ratified and incorporated by reference in an appropriate

order or decree pursuant to Virginia Code Section 20-109.1.

Counsel for Kay has submitted a detailed statement enumerating the charges assessed in defendant William's opposition to Kay's confirmation request. § 8.01-271.1 set in its pertinent parts provides:

> Section 8.01-271.1. *Signing of pleadings, motions, and other papers; oral motions; sanctions . . . .* The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, written motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant . . . .
> If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

Here, William filed a Petition to Vacate Arbitration Award and Deny Plaintiff's Request to Incorporate Award into Court Order after Kay filed a motion seeking entry of the arbitration award into a Court order. William's petition is a motion within the meaning of the statute.

The further question is whether it is well grounded in law or a good faith argument for changing existing law and is not interposed for any improper purpose.

The thrust of William's contentions do not go to changing any law. Rather he sought relief on the thinking that to confirm the award under the circumstances would not be in keeping with established law in domestic relations for policy reasons. For the reasons stated herein, the Court found this to not be the case and has decided the issues against William. What has impressed the Court about this stage of the proceeding, as was mentioned during one of the last hearings, is that one thinks of arbitration as an alternative dispute resolution device. The reasons such alternatives are resorted to is to avoid the time and expense usually attendant to litigation, to resolve disputes inexpensively without the constraints of legal proceedings and their technicalities of rules of evidence and procedure. Here, while the idea and attempt to resolve the myriad disputes between the parties is commended, I worry that the resolution of these problems in this way is in the nature of a pyrrhic victory for them (if one can call it that) because it has come about after a great deal of time and expense.

In any event, the question is whether, on Kay's motion, should she have the benefit of a sanction imposed against William for his defense to her request that the outcome be confirmed by court order as the parties agreed. And while William's position can be considered defensive, he did, in opposition, ask that the case be remanded to the arbitrator with instructions on the law to be followed. I have found no arbitration case in the domestic relations area and have been cited to none that takes the position William does that a domestic relations arbitration award is vacated or modified because of gross miscarriage of law or because the outcome of the property and support issues are grossly disproportionate. There are cases that both sides cite that speak to these principles, but in all of them, the award is upheld for much of the same reasons this award is upheld. While the Court takes great pause in considering this request because a party should always be free to seek redress, even one where an arbitration party urges that policy dictates an award should not be followed, here the issues presented are only ones

of law and fact which were resolved by the arbitrator fairly after each side was given ample opportunity to advance their positions.

The Court, in carrying out its responsibility to see that what it orders is appropriate, has reviewed this record at William's urging only to find that the issues are ones that a fair thinking arbitrator with adequate knowledge of the law could resolve. Indeed, the Court itself could have decided these questions the same way had it heard the evidence in regular proceedings. Especially in the context of arbitration generally, and here in the context of the specific agreement on arbitration, according to the principles the parties made for themselves, there is no basis, and utterly none, on which William could rightly urge the Court to invoke the relief he seeks.

Accordingly, sanctions are awarded to Kay against William in the amount of attorney's fees outlined in her counsel's statement of July 31, 1991. The Court will not sanction William's counsel because the Court refused his motion to withdraw just before this round of court proceedings on arbitration confirmation began.

### December 20, 1991

In this divorce proceeding in a letter dated November 19th, the court decided to grant plaintiff's Request to Incorporate Award into Court Order and to deny defendant's Petition to Vacate Arbitration Award. Now the parties have disputes over the implementation of that decision in the final order. Defendant has also moved the court to reconsider sanctions awarded to plaintiff under Section 8.01-271.1.

First, defendant wants the order to show a credit representing the difference between amounts paid under a temporary support order and the amount awarded as permanent support by the arbitrator. Defendant contends that the court can only incorporate in its order under § 20-109.1 that which the parties agreed to in the arbitration award rendered in May, 1991. In other words, because the arbitrator awarded a permanent support amount which is lower than the amount the temporary order requires (entered before the award) and because the arbitrator made the award in May, 1991, a credit should be shown in the order.

Plaintiff resists this on the basis that the arbitration award of support is not effective until confirmed by the entry of the order. Both sides agree that the amount of support in the temporary order was a product of arbitration. The court decides that under well known principles, temporary orders remain in effect as long as the case is pending. *Smith v. Smith*, 4 Va. App. 148 (1987). While the Court will incorporate the arbitration awards in the final order as the parties agreement pursuant to § 20-109.1, the final agreement cannot nullify the Court's previous orders, without the favored party waiving their entitlement. Rights acquired by the temporary order have been described as vested. *Smith, supra.*

Second, the parties also dispute whether interest should run on the arbitrator's equitable distribution award. Plaintiff wants the interest due from the time the arbitrator said it would run in the award while defendant says no interest should begin until the time the Court enters the order. As has been previously mentioned in the court's letter of November 19th, the parties agreed that the arbitrator's award would be their agreement. When the arbitrator made his award and specified as he did, the time that interest would run on it, that was the parties agreement. Accordingly, by the terms specified in the agreement to be incorporated, interest runs from June 18, 1991, at 8%.

Third, defendant asks that the order not require him to pay the equitable distribution monetary arbitration award until plaintiff delivers all the items of personalty the arbitrator awarded him as an equitable distribution award. He asks as well that interest on the award not begin to run until the date of delivery. The court views these obligations as independent. There is no requirement or need to condition one on the other. As mentioned at the hearing, both awards are enforceable as a provision in a Court order.

Finally, [there is] the matter of sanctions under Section 8.01-271.1. Defendant correctly observes that according to *County of Prince William v. Rau*, 239 Va. 616, 620 (1990), sanctions apply on a test of objective reasonableness and not on hindsight. He argues further that in imposing sanctions, the court did not find or could it find that his actions in opposing the request to confirm

and seeking remand to the arbitrator was done, in the words of § 8.01-271.1, for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Defendant correctly points out that sanctions are not proper simply because the Court decides adversely. Naturally, before an issue of sanctions can be decided, the Court must first hear, see, and determine whatever is being complained about as sanctionable. Even though the court agrees with defendant that arbitration awards ancillary to judicial proceedings can be attacked later in Court, this is an agreement in principle. In practice in this case -- in the context of the parties agreement to have binding arbitration -- the Court found there was no basis whatever to question the arbitrator's decisions. The contentions defendant raised were devoid of any merit in this context, according to standards known to all going in. There was no plausible view of the law available to defendant at the beginning under the circumstances of binding arbitration that made it justified to start contesting confirmation and seek remand to the arbitrator. To question them now was frivolous causing consequent unnecessary delay and expense to plaintiff. Accordingly, the decision on sanctions will remain.